I'm Russell Bowman. I represent the appellants in this matter, Surrey Oaks, L.L.C., Stanley Chu, and Nan Ling Chin. This case, it's a first-party insurance case where Judge McBride granted the defendant, Evanston Insurance Company's motion for summary judgment. And I'm sure the Court's familiar with the facts, but kind of in a nutshell, this involved a situation where Surrey Oaks, L.L.C. was the beneficiary of a deed of trust. No, no, we do have all that down, so why don't you move to your first point? The key thing on that, Judge McBride ruled against my clients for two reasons. He found that Surrey Oaks, L.L.C. did not have any capacity to make a claim. And as we had pointed out in my summary judgment response, that first off, Washington law, which controls the capacity of Surrey Oaks, L.L.C. to sue, had passed a statute in January of 2016 that would allow a dissolved L.L.C. as part of winding up its affairs to sue or either be sued, which — Well, that would require us to get into the retroactivity question about a question of Washington state law. Does all that really matter, though, if Zhu and Chin or either of them has capacity? It doesn't, Your Honor. That's why I think that's kind of a red herring issue. It doesn't matter? Yeah. Even if they don't, under Washington law with the Sharon Associates in the HB case I cited, any rights or assets of the canceled L.L.C. would revert to its members, who the evidence is undisputed are Stanley Chu and Nan Lin Chin. And that was part of what I recognized that because what he did is say, okay, even if they would have rights, there was no rights for them to assume because when the insurance company paid the claim, it discharged their liability. And part of what we did is to point out to the judge how they would be charged with notice of the publicly recorded deed of trust that required Surrey Oaks to be named as an additional insured on the Evidence and Policy. And that, again, is kind of an issue that is not one of real significance because even if they weren't charged with notice of it at the time they issued payment, they certainly were on notice of it once Stanley Chu made the claim to the insurance company. And I think Judge McBride recognized that might be a problem. So basically he reasoned that, okay, even if they did have notice by then, they had discharged their liability because they had already paid the claim. And that's where Judge McBride committed the reversible error, Your Honors, is that under the McAllen Hospital's case that was cited and discussed to Judge McBride and discussed at the time, attempts to discharge its obligation by issuing a check, like what we have here, if the check is not endorsed by all of the payees, it does not discharge the liability on the check or liability for the underlying obligation. Here the evidence was undisputed that the check issued by Evanston was only endorsed by the named insured management of payee on the check, Fannie Mae. And so at the time that Stanley Chu had submitted his claim, you know, the issue is, was Evanston's liability discharged at that point? And under McAllen Hospital's it clearly was not. Now Evanston's raised a point about McAllen Hospital's didn't come out until after, you know, the facts of this claim arose. But as I point out in the brief, the Viewpoint Bank case, which dealt with that very issue, says the McAllen decision would apply retroactively. And they cited Texas Supreme Court case law, which is the Bowen case cited in the Viewpoint Bank case, 837 Southwestern 2nd 99, where they indicated in the opinion that it's only to be applied prospectively. And this court has likewise followed that rule. I cite City of San Antonio and the Ritz cases in our brief that shows the Fifth Circuit follows that same rule to where if it's a Texas Supreme Court opinion, it's going to be applied retroactively unless they indicate otherwise in the opinion, which wasn't the case with McAllen. And so at that point, at the time the judge made his summary judgment ruling, the issue is, would Chu and Chen be the parties entitled to receive the insurance proceeds? And they clearly were by then because, as I pointed out in our brief, the Fannie Mae deed of trust was void at that point under Section 16.035D of the Civil Practice and Remedies Code. And that deals with the lien holder has a four-year period to file suit on their lien. Otherwise, it not only becomes barred by limitations, it becomes void and extinguished. And I point in the record where Fannie Mae not only gave notice of the intent to accelerate, but also the acceleration of the note. And this was back on March 13th of 2013. And that part of the record is pages 2272 to 2274. And so by the time summary judgment was being sought by my clients and summary judgment was being sought by Evanston, since the Fannie Mae lien is extinguished, my clients were the only parties entitled to receive the insurance proceeds, assuming Evanston's liability had not been discharged at that point, which under McAllen Hospitals, it clearly had not. So clarify for me what point in time we should use to determine whether Surry Oaks had a claim to the insurance proceeds. Their rights under the policy vested at the time of the loss, Your Honor. And I've got a case law cited in our brief on that that includes the Forbaugh case. And that ties in with one of the other defenses Evanston is raising, is that when the property was sold at foreclosure, my clients lost any rights to insurance proceeds. And that's just simply not the law, since the right is vested at the time of the loss. And I cited several cases, including the Edgewood Manor case. The Texas case that I found in brief dealing with that was the Northern District Savon case. And as part of getting prepared, another Texas case on that issue is the Smith v. Texas Farmers. That's 82 Southwestern 3rd, 589. And that's one where a situation similar to this, the mortgagee's debt became extinguished so that when that occurred, the proceeds or the right to them revert back to the mortgagor slash insured. And other cases holding to the same effect are the What case is there that says an insurer is obligated to survey the public records to under an insurance policy? There's not a case one way or the other on that point, Your Honor. But what I'm saying is we don't even have to get to that point. If you assume at the time they issued the check they didn't have any duty to search the public records, once Mr. Chu made his claim, that would have put them on notice at that point. And the only issue at that point would be was there liability under the policy discharge at that point, which it wasn't because the check had not been negotiated and endorsed by all of the payees on the check. So under McAllen Hospitals, their liability clearly hadn't been discharged. If we find that Fannie Mae had the right to the insurance proceeds when Evanston issued the claim check, why would Evanston then need to name Surry Oaks as a co-payee on the check? Because of the deed of trust in Texas law that, and I've cited several cases that when a party is supposed to be either named as an additional insured or mortgagee or lost payee on the policy and they're not, Texas law treats the policy as having been issued in that respect. Gives that party also a lien on any of the insurance proceeds and allows them to sue the insurer directly. So at that point, to answer your question, Your Honor, they would have had to issue a new check payable to the named insured, Fannie Mae, and Surry Oaks, LLC. I'm just puzzled and maybe you can steer me to any authority that says that we should apply the equitable lien doctrine in a situation where an insurer lacks knowledge of a mortgagee's interest in the insurance proceeds. Well, especially under the facts of this case, Your Honor, again, at the time Stanley Chu made his claim, at that point, was the insurance company stuck or could they have easily had their bank recredit their account so that the loss would have fallen on the bank that took and honored the check without it having all the necessary endorsements. I've cited a couple cases that we also cited to Judge McBride that include the impact funding case and also the standard federal, the Illinois Court of Appeals case that dealt with this same type of factual situation where they both noted the insurer has an adequate remedy. They can require their bank to recredit their funds so that they're not paying it twice and leave it up to the bank to go after the party that either secured the funds without the necessary endorsement or, I think in one of the cases, he had forged the other party's endorsement. And especially here, in a situation where evidence that should somehow be blindsided as the evidence in the record reflects that's undisputed, they're actually represented by counsel at the time Mr. Chu made his claim. So they clearly could have taken appropriate steps to honor the policy and they didn't do that. And the facts on that and the law are undisputed and show my clients are clearly entitled to the insurance proceeds, especially now that there's nobody else that would have a claim to them. And as part of that, since I'm getting close to the end of my time, one of the other defenses that I want to take up that Evanson has raised is the receivership that was done on the property that probably took place about two years, maybe a little thereafter from when the claim was made by Mr. Chu. And the receivership, as I point out in our brief, there's under our Texas law it can't destroy any vested rights under a contract or, you know, determine any rights under the contract. And again, that's another issue that kind of is a red herring, Your Honors, in that the receiver didn't do anything as far as this particular insurance claim. And as the evidence shows, once the property was sold, he filed a motion to have his receivership terminated, and an order was issued to that effect. And as the, say it right, the BAYOUD, B-A-Y-O-U-D case, Dallas Court of Appeals case I cited in my brief shows that when the receivership ends, you know, any remaining property is restored back to the owner. And since in this case that particular property would be the Fannie Mae and whatever rights Stanley Chu and Nan Lin Chin would have, and so since subsequent thereto the Fannie Mae lien became void and extinguished, it left my clients as the only parties entitled to receive the insurance proceeds. And then one other thing that I also wanted to address is Evison brought up in its brief and also to Judge McBride about the deed of trust that was executed by, in favor of Surry Oaks being unauthorized. And they said in brief that was a finding made by the court. All that was, A, was just a label that the receiver used to describe it. And two, although the deed of trust that Surry Oaks had executed in favor of Fannie Mae said that if Surry Oaks would subsequently issue a deed of trust to another party, it doesn't make that invalid. It just gives Fannie Mae the right, should it so choose, to accelerate the note, a right which it didn't exercise. I'll save the rest for rebuttal. You saved time for rebuttal, Mr. Roman. Thank you. Ms. O'Malley? May it please the Court. My name is Shannon O'Malley, and I'm here to represent the interests of the Appelli-Evanston Insurance Company in this case. The district court summary judgment ruling should be affirmed. And before we really discuss the law and the arguments in this matter, I want to raise three facts that I'd like you to keep at the top of mind. First, Surry Oaks was a stranger to the insurance policy. It was not listed as an insured, as an additional insured, or as a lost payee. Two, Surry Oaks was a stranger to the claim payment. It was not listed as a copayee when Evanston issued a payment on a claim in May of 2012 to its named insured or to the lost payee who was identified on the insurance policy. And the third fact that I'd like you to keep is that there is no case in Texas that has applied, has required an insurance company to make a duplicate payment to a third party claiming rights under the equitable insured or equitable lien doctrine when that insurance company did not have notice at the time it made a claim payment. So there's three legal topics that I'd like to talk about today, many of which were addressed by Mr. Bowman. First, Surry Oaks' claim here is based purely on the equitable insured doctrine, as I said, they're a stranger to the insurance policy. So any claims or any rights that it's claiming has to be based under the equitable insured doctrine. And that doctrine says that your rights, sorry, that the rights of a third party when there's an agreement by an insured to ensure that third party's interest will be protected. It's limited to the interest that that third party has in the property. And the courts are clear that the insurance company has to have actual notice before it can be held liable to that third party. That didn't happen here. Second, the Texas Supreme Court's decision in McAllen doesn't apply here. It doesn't revive the claim and it certainly doesn't restart Evanston's liability under the policy to Surry Oaks. At most, it creates a right of action by Fannie Mae to Evanston. Finally, I am going to discuss the District Court's summary judgment order. And that ground is the fact that Surry Oaks' D of Trust, again, which is the vehicle that Surry Oaks is using to submit its equitable insured interest claim, it was extinguished in 2013 by the court when there was a foreclosure on the property. The court in that case, in fact, specifically stated that any and all interest that Surry Oaks had in the property, including any insured, sorry, including any purported security interest, was sold and was extinguished. And that would also include the insurance proceeds that they're making a claim for today. So let's talk about the equitable insured doctrine. There's two cases that really apply here. It's the Federal and Guarantee Insurance Company v. Super Cold case and the Nelson case. Both cases recognize that an insurance policy is a personal contract between the insurance company and the insured, and that third parties can't make a claim under that contract. Now, there's a narrow exception that we're calling the equitable insured doctrine. Under the narrow set of circumstances, under principles of equity, courts have found that certain parties' interests, such as mortgagees, may be protected by agreement that's outside the insurance contract. But the court in both Super Cold and Nelson found that if the insurer is not informed of such an agreement, it is not bound thereby. And frankly, that makes sense. How can an insurance company be held liable to some party it doesn't know about? So therefore, any actions that the insurance company may take before it has notice shouldn't be held against that insurance company. The It's nothing more, nothing less. It doesn't create any kind of new status for that third party. Now, Mr. Bowman argued that Surry Oaks should have been named an additional insured. And you can call Surry Oaks whatever you want, but if you look at that second deed of trust, its interest was as a mortgagee. It was asking its buyer, I guess management here, who is Evanston's insured, it's asking management, please make sure that this property is insured and that my interests are protected. And that's what management failed to do, but that's what the equitable insured doctrine is in place to do. So the cases that Mr. Bowman cites to claim this additional insured protection, they don't support his argument. For example, one of the cases he cites is Nelson, which is what I rely on. And in that case, the court just extended the equitable as opposed to just limiting it to the mortgage context. Another case he relies on is called Transport International. In that case, the insurance policy had an actual endorsement in place that permitted the insured to add people as additional insureds. And that endorsement said, here's the extent of coverage we'll provide to those additional insureds. That was also a CDL policy. Another case he relies on is Maryland Casualty v. Palliston, where the court actually rejects a third party's claim and says complete strangers to the contract can't make a claim here under. So, as again, you know, if you call, you can call it sorry oaks, whatever you want, but it's a mortgagee interest that's trying to claim here. They're also trying to expand the equitable insured doctrine to circumstances where there's no notice of the agreement. As I said at the beginning, there's no cases in Texas that require an insurance company to reissue a duplicate payment when the payment has already been made and before the insurance company has notice of that. So let's talk about notice. He talked briefly about constructive, that Evanston had constructive notice. Well, as the Fifth Circuit recognizes in Kansa re-insurance, constructive notice only applies to put people on notice for those who have an obligation to search for it. There's never been a case in Texas that says an insurance company should go out and search for the land deeds of property that it insured, nor should there be. That would basically be requiring an army of deed checkers to go out there for every time an insurance company issues an insurance policy, and that's just an unreasonable burden that no State court in Texas has done. Next, in fact, the HECI, which is a Texas Supreme Court case, noted when the rationale for imposing constructive notice is lacking, public records have not been held to create an irrebuttable presumption of notice. So there is no constructive notice that should be applied here. There's also no actual notice. I think Mr. Bowman admitted in his argument that Evanston didn't have any notice until August of 2012, which was three months after the claim payment was made. So I'd like to address the McAllen case. That's a Texas Supreme Court case that came down in 2014. Now, Mr. Bowman said it applies retroactively, and admittedly, we agree, it does apply retroactively. But I want to say, as a practical standpoint, how is an insurance company in 2012 who's following the law in place at the time under the case benchmark supposed to know in two years the court is going to make a change in the decision? But regardless, McAllen doesn't apply. At most, McAllen stands for the proposition that Fannie Mae, who was a co-payee on the check and did not endorse that check, has a right to sue Evanston. But again, as I said at the beginning, Surry Oaks is a stranger to that check. So Surry Oaks was not a co-payee, and it doesn't have a right to enforce that check. And Mr. Bowman discussed the viewpoint case, which I think is actually very instructive here for you to consider. Under the viewpoint case, that was the case where a mortgagee was named on a check, and the insured deposited that check without the mortgagee's endorsement. The mortgagee tried to enforce it directly against the insurance company. Notably, that was a mortgagee who was named on the policy, which is not our case here, and it was a co-payee on the check, which is also not our case here. The viewpoint court analyzed McAllen, and it analyzed the UCC, under which McAllen was actually discussed. And the court said under section 3.310, there are two avenues a co-payee can proceed to try to enforce a mortgage on the check, or it can go against the insurance company. The court said, if you go against the insurance company, you have to bring your claims under section 3.309 of the UCC. Well, the comments to those sections, and the court and viewpoint specifically said, you can't sue on the underlying contract. For example, here, the insurance policy, you have to sue on the instrument. And we made that point in our response brief, that it's the instrument on which you sue. That is the point. Now, Mr. Bowman discussed the case standard federal as support for his position. Well, the standard federal case is a 1980s case that's been superseded by statute. In fact, superseded by section 3.309 and 3.310. And that was specifically discussed in a different case called Parkway Bank. And in that case, the court said, the plaintiff may not sue the defendant on the underlying contract. So here again, the party that can sue is Fannie Mae to enforce under the UCC, its rights as co-payee. It's certainly, McAllen and viewpoint in these other cases, certainly don't stand for the proposition that a stranger to the policy and a stranger to the And nor should this case, nor should this court expand those decisions to do that. So finally, I want to talk about the receivership. The property was foreclosed upon in 2013. And as part of the foreclosure, as I said, the property was sold and Suryoak's interests in the property were sold. Security interests were sold. Texas courts, well, sorry, federal courts and Texas courts, looking at receivership law, have determined that there really is not a lot of case law out there talking about what do you do with insurance proceeds in the context of a receivership. And so the court in Mary Ann said, we will look at bankruptcy law to see what happens with respect to debtor estates. And so applying that, if you look at the Enri Hereford Biofuels case, which is a northern district of Texas case, which relies on the Louisiana World Expo case, Enri Assay and Enri Equinox, which are all Fifth Circuit precedent, the court in Enri Hereford Biofuels determined that proceeds of a property insurance policy are merely considered a change in the form of the estate and are property of the estate itself, so that when the estate is sold, so are those proceeds, so are the right to the proceeds. And the reason for that is, if you think about the difference between property insurance versus CGL insurance, things like that, property insurance is there to protect the property. So if there's damage to the property, you want to have insurance that can come in and fix that damage. So it makes sense that if you are selling the property to a buyer, that that buyer has rights to the insurance proceeds. Now, Mr. Bowman talked about vested rights, things like that. Those cases that he cited, if you read them, they actually don't apply in that scenario. So, Mal, you mentioned one of the three things you wanted us to keep in mind. Yes. That no Texas case has required an insurance company to make a duplicate payment when it had no knowledge. And I understand the point. But explain to me, how is Evanston harmed by canceling the original, I know it's been cashed, but, and reissuing the check with Surry Oaks named as a payee? What's the harm to Evanston? I know there's no case requiring, as you put it, a duplicate check, but what's the harm? Well, it requires Evanston to go after its bank and to seek to spend money and time and effort to go after its bank to get that money back. So essentially what we're talking about here is Evanston issuing a second payment. So it's already spent $211,000. So now it has to spend $211,000 more to a party that it didn't have any notice of at the time it made the payment. So requiring Evanston to now have to spend its own money and interest and etc. to go after its bank is not also required by Texas law. There's nothing out there that shows it. And that is a harm because it's money and it's time and who knows how hard it's going to be to get the bank back. And again, talking practically, back in 2012, it didn't have to do that. In 2012, the law was when it issued its check, it did what it was supposed to do. So going back to the vested rights, you know, the cases that Mr. Bowman relies on typically relate to, again, the insured having a vested right or where there's a CGL type policy and it just does not apply here. I want to point out too that, you know, this is a claim that Syriox is making under the second deed of trust. There's a Palestine, I'm sorry, a case called Peacock and we addressed it in our argument, I'm sorry, in our response brief and it was raised in Mr. Bowman's reply brief. And in the Peacock case, the court found that an insurance company can't look to a deed of trust to avoid making payment to an insured. But that's not what's going on here. You have to look at the terms of the deed of trust and the original deed of trust to determine what the interest of that party is. Because, again, stranger to the insurance policy, so the only reason that they can make a claim is under the equitable insured doctrine and the equitable interest is defined by the second and the original deed of trust. So if you don't have an interest anymore, that's extinguished and there's plenty of cases out there that says succinctly if the mortgagee has no interest, then the insurance company has no liability to that mortgagee. So I want to talk about some of the issues raised. Again, we talked about McAllen, discharge liability, because it's already paid the claim. McAllen only stands for the fact that Fannie Mae might have a right. Oh, in the vested interest, Mr. Bowman talked about the Forbau case and the issue there is that the site in Mr. Bowman's reply is to the extent. It was actually, that wasn't the ruling in the case that he is citing it to and, in fact, it just related to the cancellation of a group policy and whether or not a party can continue to have rights under an insurance policy for medical benefits. Same thing with Edgewood Manor. It related to the right to recover a replacement cost after a voluntary sale of the property. Again, that was an insured who had a right and had a vested right into the insurance proceeds, sold the property, and wanted to get replacement costs, and the court said, well, we'll consider that, and that was that context. It has nothing to do with the issues here. Certainly nothing to do with the issue as to whether or not an equitable insured has a right. So I think that I've addressed the issues that were raised by Mr. Bowman. I just want to conclude by stating that Surry Oaks is essentially asking this court to expand and disregard established Texas law concerning the equitable insured doctrine. It shouldn't. The district court appropriately applied Texas law when it determined that Evanston cannot be required to issue a duplicate payment to Surry Oaks, a stranger to the policy who is seeking coverage under the equitable insured doctrine and under equitable principles because Evanston had no notice at the time that Surry Oaks, of Surry Oaks' interest at the time of the claim was paid. It's not only inconsistent with established Texas law. What it's doing is it's seeking to destroy contract certainty. Insurers will not be able to rely on payments to the parties named in its insurance policy to discharge their liability if this case is reversed. This is an unreasonable burden that's not imposed by the law, and therefore, the court's ruling should be affirmed in all respects. I'll give you back your time. Thank you. Mr. Bowman, you save time for a vote. Just kind of hitting counsel's points in the order presented. One of the things she mentioned is that under the deed of trust that was executed in Surry Oaks' favor, their only interest was as a mortgagee, and that's clearly not the case. I quote the provision in our brief, but one part of it in particular, it required that the insurance to be obtained by management of Surry Oaks shall name Grantor, which was Surry Oaks LLC, as an additional insured through an endorsement to such policies. And the reason that was in there is because even though Surry Oaks had gotten the deed of trust in its favor from management of Surry Oaks, Surry Oaks LLC was still obligated under its deed of trust to Fannie Mae. So that's exactly why that provision was in there. Its interest is not as a mortgagee, but as an additional insured, which would give it the same rights as the named insured. So when the, as far as counsel's arguing about the deed of trust being extinguished, at that point Surry Oaks' right to the insurance proceeds and that of Chu and Nanling Chen were already fixed, and part of that is discussed in the Smith case that if the mortgagee's interest becomes extinguished, which in this case is Fannie Mae, then any insurance proceeds that would remain to be owed would revert back to the mortgagee or insured, who in this case would be Surry Oaks LLC, whose rights Chu and Ms. Chen would accede to. Now, another point counsel brought up was the viewpoint case. That case held exactly as McCall, and I went back and read it there briefly just to make sure, but basically if you're the party who's been named on the check, but your endorsement was forged or it was negotiated without your endorsement, that party has two options. It could sue the bank on the negotiable instruments itself or sue the drawer on the underlying obligation. In this case, the remedy of Surry Oaks LLC would be to sue Evanston under the underlying obligation since they weren't named on the check itself. And now counsel is stating the burden this would impose on the parties. All this case is dealing with is that if they're on notice like they finally were when Chu made his claim and their liability is not discharged, they need to reissue the check and have their bank recredit their account. If this were a situation where both Fannie Mae and management of Surry Oaks had endorsed the check, I would probably agree that Evanston's liability was discharged. So my client's remedy at that point would be to go after management of Surry Oaks, but that's not the factual scenario we're dealing with here. Evanston clearly could have easily made this right and chose not to do so. And so it's the only burden that's been put on them is because of their own actions, especially as I mentioned earlier, they're actually represented by counsel. They clearly had a conversion claim against their bank. And as far as fees they could recover or incur, that would be something that the bank would owe if they chose not to recredit their account and make them pay. So again, this easily is a situation that could have been made right and for whatever reason chose not to. Isn't it also though easy for a party who purchases an insurance policy to name all the insured parties? I'm not sure I'm following you, Your Honor. Are you talking about when management of Surry Oaks got the policy? Well, I'd asked earlier about if there was any case that says an insurer is obligated to rummage around and mine all the public records to determine every potential beneficiary under a policy. And I'm like, well, doesn't it make sense to put the burden on the party who purchases the insurance policy to name all the insured parties? And if they did, we have this case law that evolved that if they fail to name somebody in the policy like they're supposed to, that's why Texas law treats that policy as having been issued that way. And especially here, Your Honor, again, if the facts are different, it's not placing a burden on the insurance company to do something they ordinarily wouldn't have to. They had notice and had a chance to fix it. Didn't do it. I see I'm done. Thank you, Your Honor. Thank you, Mr. Broman. Your case and all of today's cases are under submission and the court is in recess under the usual order.